STEPHEN SPINELLO *v.* STATE OF CONNECTICUT ET AL.
(5340)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Submitted on briefs June 1—decision released September 22, 1987

*Joseph I. Lieberman,* attorney general, and *Harry W. Hultgren,* assistant attorney general, filed a brief for the appellant (named defendant).

*Michael S. McKenna* filed a brief for the appellee (plaintiff).

SPALLONE, J. The named defendant state of Connecticut is appealing from the judgment of the trial court rendered after the acceptance of the report of an attorney state trial referee.

In his report, which was accepted in full by the trial court, the attorney trial referee found the following facts. On September 12, 1982, at approximately 8:06 p.m., the plaintiff was walking from east to west on a drawbridge known as the Washington Street bridge in Norwalk, Connecticut. This bridge is maintained by the state and was being operated by Isaac Lee, a state employee. The drawbridge operates in the following manner: Before the bridge is opened, a warning system of lights, horns and bells signals that the bridge is about to open. Just before the bridge opens, gates are lowered so as to block any access to the bridge by either vehicles or pedestrians. The two "spans" of the bridge (those sections of the bridge that are movable) are held closed by a mechanism called "span locks." The span locks must be disengaged before the bridge can be opened. When the span locks are disengaged the warning bells cease. Between the gates and the spans are stationary areas that do not rise when the bridge is opened.

The plaintiff and his companion had passed the warning gate when it came down behind them. The bridge operator saw the plaintiff on the wrong side of the gate and blew a horn in an attempt to warn him. Although the plaintiff did not respond to the warning, the bridge operator proceeded to raise the bridge in order to allow a large vessel to pass. After the vessel had passed, the operator began to lower the bridge. Before the bridge was closed, however, the operator caused the bridge to be opened a second time. The operator failed to operate any warning devices before opening the bridge the second time. After the bridge had been raised again, the plaintiff fell from the east span and landed on the west span. As a result of the fall the plaintiff suffered serious physical injuries. The attorney referee found that the actions of the bridge operator constituted actionable negligence and that this negligence was the sole proximate cause of the plaintiff's injuries.

In a letter from the commissioner of claims of the state of Connecticut, dated July 13, 1983, the plaintiff was advised that "the matter can now be sued directly in the court in the event you are unable to obtain settlement by the insurance carrier." Because the state had no insurance coverage from which he could benefit, the plaintiff, construing the claims commissioner's letter as permission to sue, issued a writ, summons and complaint against the defendants on September 27, 1983.

The complaint was in two counts, the first alleging negligence and the second alleging a highway defect. The second count was stricken by the court, *J. Healey, J.*, and a trial was held on the first count before an attorney trial referee. The attorney referee issued his report containing his findings and recommending that judgment enter for the plaintiff against the state in the amount of $85,000. The trial court overruled the state's

objection to the referee's report and rendered judgment for the plaintiff in accordance with the report.

The state has appealed and claims that the trial court erred (1) in finding that the claims commissioner granted the plaintiff permission to sue, (2) in permitting this action under General Statutes § 4-160 when the plaintiff had a cause of action under General Statutes § 13a-144, (3) in failing to sustain the defendants' first special defense in that permission to sue was not granted because the claims commissioner lacked jurisdiction, and (4) in failing to find that the plaintiff's injuries were caused by his own contributory negligence.

In its first two claims of error, the state contends that the trial court erred in concluding that the claims commissioner had properly authorized the plaintiff's negligence suit. The state argues that the claims commissioner lacked jurisdiction to authorize this action because the commissioner has no authority to hear or determine claims that are "otherwise authorized by law." General Statutes § 4-142 (2).[1] The state asserts that because the plaintiff's claim could have been brought under the Defective Highway Statute, General Statutes § 13a-144,[2] the plaintiff's action was "other-

---

[1] General Statutes § 4-142 provides in part: "There shall be a claims commissioner who shall hear and determine all claims against the state except: . . . (2) claims upon which suit otherwise is authorized by law . . . . "

[2] General Statutes § 13a-144 provides in part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and

wise authorized by law" and therefore could not be properly permitted by the claims commissioner.

Chapter 53 of the General Statutes, § 4-141 et seq., creates the office of claims commissioner and establishes the procedure for redressing claims arising from the actions of the state and its officers and employees. See General Statutes § 4-165. Pursuant to General Statutes § 4-160 (a), the claims commissioner is authorized to permit a claim against the state when the commissioner "deems it just and equitable." If the claims commissioner authorizes suit, the state waives its sovereign immunity. General Statutes § 4-160 (a); *McKinley* v. *Musshorn,* 185 Conn. 616, 621, 441 A.2d 600 (1981). Under General Statutes § 4-142 (2), however, the claims commissioner has no authority to hear and determine "claims upon which suit is otherwise authorized by law."

We note that General Statutes § 4-160, under which the claims commissioner may grant permission to sue the state, does not contain the same explicit restriction over the claims that the commissioner is allowed to hear that is set forth in General Statutes § 4-142. Even if we assume, however, that § 4-160 contains an implicit limitation restricting the claims commissioner from granting permission to sue the state with respect to claims that are "otherwise . . . authorized by law"; General Statutes § 4-142 (2); we would find no merit to the state's claim in this instance. General Statutes

of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. . . . ''

§ 13a-144, which the state claims would have authorized the plaintiff's negligence claim, provides that a person may bring suit against the state if that person is injured "through the neglect or default of the state or any of its employees *by means of any defective highway, bridge or sidewalk* . . . ." The plaintiff's negligence claim, however, was not related to a defective highway, bridge, or sidewalk, but was related solely to the conduct of the bridge operator.[3] Cf. *Comba* v. *Ridgefield,* 177 Conn. 268, 270, 413 A.2d 859 (1979). The trial court, therefore, properly concluded that the plaintiff could not bring a claim for the bridge operator's negligence under General Statutes § 13a-144, and that the claims commissioner had jurisdiction over the plaintiff's negligence claim.

In its remaining claims of error, the state attacks the attorney trial referee's finding that the claims commissioner had provided the plaintiff permission to sue the state and that the plaintiff's injuries were caused by the negligence of the bridge operator rather than the plaintiff himself. Our review of these factual findings is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings in the whole record. Practice Book § 4061; *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987). It is the province of the trial court to pass upon the credibility of the witnesses and the weight to be accorded the evidence. *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 102, 476 A.2d 1071 (1984). This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to deter-

---

[3] The plaintiff's original complaint contained a separate count alleging a violation of General Statutes § 13a-144. This count, however, was stricken by the court before trial on the ground that the plaintiff had failed to comply with the time prescriptions of that statute. See footnote 2, supra.

mine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did. *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 676–77, 443 A.2d 486 (1982); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280–81, 471 A.2d 651 (1984). There was ample evidence submitted in this case to justify the finding that the claims commissioner's letter of July 13, 1983, gave the plaintiff permission to sue the state under General Statutes § 4-160. Furthermore, the evidence was sufficient to support the finding that the bridge operator's negligence was the sole proximate cause of the plaintiff's injuries.

There is no error.

In this opinion the other judges concurred.