[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
On May 30, 1995, the plaintiff, Angelo D. Joyner, an inmate at the Connecticut Correctional Institution at Cheshire, filed a pro se complaint against the defendants, Warden Leonard G. Barbieri, Shoemaker[1] and the Cheshire Correctional Institution Medical Department[2] in their official and individual capacities for alleged civil rights violations arising under 42 U.S.C § 1983[3] The plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.
The plaintiff alleges the following facts in his complaint. On February 10, 1995, the plaintiff became ill and sought medical treatment. A doctor was not available so the plaintiff was attended by a nurse who gave him a prescribed drug and some maalox. No doctor prescribed any medication for the plaintiff.
The plaintiff's condition worsened and he returned to the medical department. At this time, the plaintiff was called to the medication window and given a small brown paper bag containing medication. Ten minutes after taking the medication, the plaintiff had a negative reaction to it which caused him to vomit violently. As a result, the plaintiff was rushed to St. Mary's Hospital. An examination of the medication bag revealed that the plaintiff had been given medication prescribed for another inmate.
After returning from the hospital, the plaintiff was not CT Page 12516-R provided with his prescribed medication.[4] On February 16, 1995, the plaintiff filed an emergency medical grievance with the warden regarding this problem. The next day, the plaintiff once again did not receive any medication and his condition worsened.[5] As a result, the plaintiff alleges a failure to provide adequate medical care or, as more commonly phrased, "deliberate indifference" to his serious medical needs.
In addition, the plaintiff alleges that interference with his legal mail has denied him meaningful access to the courts. Specifically, the plaintiff claims he received two pieces of legal mail regarding short calendar dates approximately two weeks after the postmark date, effectively denying him the opportunity to appear in court. The plaintiff has also received legal mail which has been opened before being delivered to him. As a result, the plaintiff filed a grievance with the mail room supervisor, defendant Shoemaker, who tried to assure the plaintiff that there was no problem with mail room operations and that there would be no future problem. Despite this, the arbitrary handling of the plaintiff's mail continued.
The plaintiff also alleges that he was placed in a cell with a mentally ill inmate as a result of prison overcrowding. One day in January 1995, the plaintiff returned to his cell to find that his cellmate had given away, sold or stolen over seventy percent of the plaintiff's property. The cellmate also threw away or destroyed some of the plaintiff's legal documents. As a result, the plaintiff, who also has a history of psychiatric problems, fears for his safety and is suffering emotional distress.
The plaintiff seeks the following relief: a declaratory judgment that the defendants' acts violated the plaintiff's constitutional rights; a temporary injunction prohibiting the defendants from transferring the plaintiff to another institution without his consent; a permanent injunction requiring that the plaintiff receive prescribed medical treatment in a timely manner; and compensatory and punitive damages, including costs and attorney's fees.
On July 5, 1995, the defendants filed a motion to dismiss the plaintiff's complaint in its entirety for lack of subject matter jurisdiction on the grounds that the action is barred by the doctrine of sovereign immunity and for lack of personal participation. The plaintiff opposes the motion. CT Page 12516-S
 I
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). In deciding a motion to dismiss, the trial court must consider the allegations of the complaint in their most favorable light. Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696
(1990). "The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." Amore v. Frankel, 228 Conn. 358, 364,636 A.2d 786 (1994).
The defendants argue that the action should be dismissed in its entirety for lack of subject matter jurisdiction on the grounds that it is barred by the doctrine of sovereign immunity and for lack of personal participation. In opposition, the plaintiff argues that the attorney general is not authorized to represent the defendants in their individual capacities.[6]
"We have long recognized the common-law principle that a state cannot be sued without its consent. . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. (Citations omitted; internal quotation marks omitted.) Sentner v. Board of Trustees, 184 Conn. 339, 342,439 A.2d 1033 (1981).
The United States Supreme Court has held "that a state or state official while acting in his official capacity is not a `person' within the meaning of § 1983."[7] Krozser v. NewHaven, 212 Conn. 415, 417-18 n. 5, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1026, 110 S.Ct. 75, 107 L.Ed.2d 774 (1990), citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 64,109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, state officials may not be sued in their official capacities unless the state consents to be sued. "It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles CT Page 12516-T should be treated as an action against the state such as to clothe the defendants with immunity from suit." (Internal quotation marks omitted.) Antinerella v. Rioux, 229 Conn. 479,487, 642 A.2d 699 (1994).
"Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute."[8] Id., 487-88. In making a threshold determination of whether sovereign immunity applies, "we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . to support a conclusion that the defendant[s] acted in excess of [their] statutory authority." Id., 489. In this case, the defendants did not act outside the scope of their authority. Thus, the doctrine of sovereign immunity is applicable.
"Before a claimant may pursue any monetary claim against the state, if the doctrine of sovereign immunity is applicable, the state must consent to be sued. . . . The claims commissioner . . . may waive that immunity pursuant to General Statutes § 4-160(a) and consent to suit."[9] Krozser v. NewHaven, supra, 212 Conn. 423. Until that happens, however, "this court lacks subject matter jurisdiction to hear claims regarding violations of civil rights under 42 U.S.C. § 1983, or other claims made against the [defendants] acting in their official
capacities" (Emphasis in original.) Tremblay v. Webster, Superior Court, judicial district of New London at New London, Docket No. 530898 (Feb. 23, 1995, Hurley, J.); see also Krozser v. NewHaven, supra, 212 Conn. 423. In this case, there is no evidence that the plaintiff received permission from the claims commissioner to sue the state. Accordingly, since the state has not waived its immunity from suit for money damages, the doctrine of sovereign immunity requires dismissal of all claims against the defendants in their official capacities. See Tremblay v.Webster, supra; Hackett v. State, supra.
Although the doctrine of sovereign immunity bars the claims against the defendants in their official capacities, it does not necessarily bar the claims against them in their individual capacities. General Statutes § 4-165 provides in pertinent part:
 No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his CT Page 12516-U employment. Any person having a complaint for such damages or injury shall present it as a claim against the state under the provisions of this chapter.
Thus, "[t]he statute . . . does not provide immunity to states employees whose acts are wanton or malicious."[10] Tremblay v.Webster, supra. In addition, although the statute requires a plaintiff to get permission from the claims commissioner to sue a state official or employee for negligence, no such permission is required to bring a claim for reckless, wanton or malicious conduct. Id.
In determining whether a defendant is entitled to personal immunity under General Statutes § 4-165, "we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . to support a conclusion that the defendant was acting outside the scope of his employment or wilfully or maliciously."Antinerella v. Rioux, supra, 229 Conn. 489. As noted, it appears that the defendants were not acting outside the scope of their employment. "In making a claim for willful or malicious conduct, the plaintiff must do more than merely incorporate those words into the complaint." Tremblay v. Webster, supra. Rather, "[t]he complaint must make a specific allegation setting out the conduct that is claimed to be reckless or malicious." (Internal quotation marks omitted.) Id.
In this case, the plaintiff alleges deliberate indifference to his serious medical needs. "[D]eliberate indifference to serious medical needs of prisoners constitutes the `unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." (Citation omitted.) Estelle v. Gamble, 429 U.S. 97,104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), reh. denied, 429 U.S. 1066,97 S.Ct. 798, 50 L.Ed.2d 785 (1977). In their brief, the defendants argue that "[t]he factual allegations in Counts 1-9 of the Complaint concern the Medical Department and not the defendants Barbieri or Shoemaker." Although Shoemaker is not referred to regarding the deliberate indifference claim, the complaint does state that "[o]n [February] 16, 1995, the plaintiff filed an emergenc[y] medical grievance with . . . warden [Barbieri] concerning the problem with his medication." Following the filing of this grievance, the plaintiff alleges that he continued to not receive his medication. Although not articulately drafted, the plaintiff's complaint could be read as alleging deliberate indifference against Barbieri.[11] As a result, the motion to dismiss the deliberate indifference claim CT Page 12516-V is denied as to the defendant Barbieri in his individual capacity.[12]
Similarly, the plaintiff filed a grievance with the defendant Shoemaker with regard to the interference with his legal mail, which was allegedly being opened and read and arbitrarily withheld from the plaintiff. The complaint also alleges that on March 6, 1995, Shoemaker himself delivered an opened letter to the plaintiff from the Attorney General regarding the plaintiff's complaint about the mail. Again, since the complaint alleges conduct that may be found to be "wanton, reckless or malicious," the motion to dismiss the "denial of access to courts" claim is denied as to the defendant Shoemaker in his individual capacity.[13]
In addition, the plaintiff alleges a violation of his Eighth Amendment rights as a result of being placed with a cellmate due to prison overcrowding. In this instance, however, the plaintiff does not allege a single fact to indicate that the action may have been taken in a wanton reckless or malicious manner. As a result, the motion to dismiss the Eighth Amendment claims as a result of overcrowding against the defendants in their individual capacities is granted.
 II
The defendants also argue that the complaint does not allege personal involvement of the defendants sufficient to state cognizable claims under 42 U.S.C. § 1983. "This response does not, however, support the ground actually set forth in the motion to dismiss — lack of subject matter jurisdiction — but constitutes either an attack on the legal sufficiency of the complaint (which is properly raised by a motion to strike) or on the merits of the claim. Pursuant to [Practice Book § 142], a motion to dismiss can be used only to contest jurisdiction. A prediction that the plaintiff will not ultimately prevail on the merits of [his] . . . action does not support a conclusion that the court is without jurisdiction to hear the matter." Allenv. Commissioner of Corrections, Superior Court, judicial district of New Haven, Docket No. 333240 (March 3, 1993, Hodgson, J.).
 III
Therefore: (1) the motion to dismiss as to claims for monetary damages against the defendants in their official CT Page 12516-W capacities is granted; (2) the motion to dismiss as to the claims seeking monetary damages for deliberate indifference and denial of access to court against the defendants Barbieri and Shoemaker, respectively, in their individual capacities is denied; (3) the motion to dismiss as to the prison overcrowding claim against the defendants in their individual capacities is granted; and (4) the motion to dismiss as to claims for declaratory and injunctive relief is denied.
FREEDMAN, J.